**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **MATTHEW AUSLANDER,** | : | **Civil Action No. 20-12542 (MEF)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **REPORT & RECOMMENDATION** |
| | : | |
| **HECTOR LORA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**CLARK, Magistrate Judge**

This matter has been opened by the Court *sua sponte* based on the failure of Plaintiff Matthew Auslander ("Plaintiff") to comply with Court orders and prosecute his case. For the reasons that follow, it is respectfully recommended that this action be dismissed with prejudice.

**BACKGROUND**

Plaintiff's initial Complaint in this matter was filed on September 10, 2020. *See* Dkt. No. 1. On November 22, 2020, prior to effectuating service of his initial Complaint, Plaintiff filed an Amended Complaint. *See* Dkt. No. 4, Amended Complaint. According to the Amended Complaint, Plaintiff was, at all relevant times, employed as a police officer by Defendant City of Passaic ("Passaic") and from 2013 until October of 2016, Plaintiff was assigned to the "Quality of Life Unit" in the Passaic Police Department ("PPD") which was commanded by D/Sgt Roy Bordamonte. Amended Complaint at ¶ 7-8. Plaintiff alleges that in June of 2016, Alex Blanco, who was then the mayor of Passaic, was "picked up and questioned by the FBI over a kick-back scheme involving a developer in the City of Passaic." *Id.* at ¶ 9. Purportedly, "Blanco's arrest and pending indictment had become common knowledge" within the PPD "by August 2016 or earlier," and Public Safety Director Richard Diaz, a former deputy chief of the PPD and "longtime political

1

ally" of Blanco "began to explore the idea of seeking to succeed Blanco." *Id.*

Plaintiff claims that Bordamonte was "widely known as one of 'Richie's boys,' meaning that he was close to Richard Diaz within the PPD cliques and politically." *Id.* at ¶ 10. However, despite the friendship between Diaz and Blanco, Blanco "hand-picked" as his successor his "cousin-by-marriage," Defendant Hector Lora. *Id.* at ¶ 11. Diaz allegedly announced his candidacy for mayor at a "neighborhood barbeque attended by over 1000 people" on September 18, 2016. *Id.* at ¶ 12. Plaintiff claims he was present "to show his support" and that a photo of Plaintiff at the event was "widely circulated on social media." *Id.*

Blanco's criminal prosecution was "made public" on September 16, 2016, and on September 26, 2016, Richard Diaz was "abruptly suspended from his position" as Public Safety Director. *Id.* at ¶ 13-14. "Within weeks" thereafter, the "serving Chief," Ross Capuana, "abruptly retired" and the Quality of Life Unit to which Plaintiff was assigned was "shut down." *Id.* at ¶ 15. On November 17, 2016, Blanco allegedly entered a guilty plea and resigned his position as mayor. *Id.* at ¶ 16. On November 21, Defendant Lora was "appointed by the City Council to fill the remainder of Blanco's term." *Id.* Following Defendant Lora's appointment, Plaintiff alleges that the officers assigned to the Quality of Life Unit have been "harassed and hounded by the PPD." *Id.* at ¶ 17. Specifically, Plaintiff claims he was assigned to "Patrol Shift B" despite his stated preference and qualifications for assignment to other units. *Id.* at ¶ 18.

According to Plaintiff, Defendant Alexander Castellon, who is a "well-known supporter of Defendant Lora," and has been "the Lieutenant commanding the Detective bureau since the end of 2016," and Defendant Vincent Gentile, who is the Deputy Chief of the PPD, have engaged in conduct which created a hostile work environment for Plaintiff. *Id.* at ¶ 19-21. Specifically, Plaintiff claims Defendant Castellon threatened to contact Defendant Lora regarding Plaintiff's

job performance and that Defendant Gentile advised Plaintiff's supervisor to deny Plaintiff's request to be transferred to another unit because Plaintiff was "too close to [Bordamonte]." *Id.* at ¶¶ 23, 25. Due to the purported harassment of Plaintiff by Gentile and Castellon, Plaintiff initiated the process to transfer to the Elmwood Park Police Department. *Id.* at ¶ 27. However, Defendant Gentile allegedly "blocked" Plaintiff's efforts to be transferred and falsely advised the Elmwood Police Department that "Plaintiff had a bad IA record."[1] *Id.* at ¶ 28.

Based on the foregoing allegations, Plaintiff's Amended Complaint states claims under 42 U.S.C. § 1983 (Count 1) and the New Jersey Civil Rights Act ("NJCRA") (Count 2) against Lora, Gentile and Castellon (collectively the "Individual Defendants") and a "respondeat superior" claim against Passaic (Count 3). In response to the Amended Complaint, Defendants Passaic and Lora filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 8. Plaintiff opposed the motion to dismiss [Dkt. No. 12] and also filed a separate motion seeking leave to file a Second Amended Complaint [Dkt. No. 13] to substitute the respondeat superior claim against Passaic for a "custom and practice" allegation intended to support municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). While the Court granted Plaintiff's motion to amend, the Court found that the amended claims against Defendant Lora and Passaic failed to state a claim and, accordingly, dismissed Counts 1 and 2 as to Defendant Lora and Count 3 in its entirety. *See* Dkt. No. 16. The dismissal, however, was entered without prejudice to the filing of a motion for leave to file a Third Amended Complaint within thirty days. *Id*. Plaintiff did not seek leave to file a Third Amended Complaint and the previous dismissal without prejudice was converted to a dismissal with prejudice on November 22, 2021. *See* Dkt. No. 22.

The Court entered a pretrial scheduling order setting forth deadlines for discovery in this

---

[1] Plaintiff "obtained clearance" for his requested transfer on September 17, 2018. Amended Complaint at ¶ 29.

matter on November 22, 2021. *See* Dkt. No. 23. On October 3, 2022, Plaintiff's counsel failed to appear for a scheduled telephone conference and the conference was adjourned to October 12, 2022. *See* Dkt. No. 30. Plaintiff's counsel then failed to appear for the rescheduled telephone conference on October 12, 2022, and the Court entered an Order to Show Cause requiring Plaintiff to demonstrate why his case should not be recommended for dismissal based upon Plaintiff's failure to prosecute. *See* Dkt. No. 31. In response to the Order to Show Cause, Plaintiff's counsel filed a Certification stating that his failure to appear for both telephone conferences was the result of a miscommunication between himself and Defendants' counsel. *See* Dkt. No. 32. The Court held a hearing on the October 17, 2022 Order to Show Cause, for which Plaintiff's counsel appeared, on November 28, 2022 and issued an Order withdrawing the October 17, 2022 Order to Show Cause and setting a discovery deadline of January 31, 2023. *See* Dkt. No. 33.

On January 20, 2023, counsel for Defendants filed a letter claiming that Plaintiff had failed to provide answers to several interrogatories served by Defendants and requesting that Plaintiff be ordered to cure the alleged deficiencies. *See* Dkt. No. 34. The Court entered an Order on January 23, 2023 which required Plaintiff to cure the deficiencies in his discovery responses by January 31, 2023 and extended the discovery deadline to March 15, 2023. *See* Dkt. No. 35. Defendants filed another letter on February 27, 2023 claiming that Plaintiff had failed to cure the alleged deficiencies in his discovery responses and requesting leave to file a motion to dismiss based upon Plaintiff's failure to participate in discovery. *See* Dkt. No. 36. The Court entered an Order on March 1, 2023 denying Defendants' request for leave to file a motion to dismiss and requiring Plaintiff to "fully respond to any outstanding discovery requests by March 6, 2023" and to "submit a letter to the Court explaining [Plaintiff's] failure to comply" with the Court's previous Orders by March 8, 2023. *See* Dkt. No. 37.

Plaintiff's counsel filed a letter, dated March 15, 2023, stating that he was "unable to obtain more complete discovery responses from [Plaintiff], despite [his] efforts to do so." *See* Dkt. No. 39. In light of Plaintiff's reported failure to cooperate with his counsel in discovery, the Court issued another Order to Show Cause, dated April 3, 2023, again requiring Plaintiff to show cause why his case should not be recommended for dismissal based upon his failure to prosecute his claims. *See* Dkt. No. 40. Plaintiff did not submit a written response to the Order to Show Cause and did not appear for the Order to Show Cause hearing on May 18, 2023.

On October 6, 2023, Plaintiff's counsel filed a Certification signed by Plaintiff in which Plaintiff states that:

> Earlier this year, in the spring, Mr. Cotz advised me that if I did not identify the officers in the Passaic Police Department who had repeated statements to me made by our various supervisors, my case would be dismissed. I understood this, and directed him that I would not provide any information beyond what I was already given. I have no wish to bring retaliation on my former fellow officers.

Dkt. No. 43.

## ANALYSIS

The Federal Rules of Civil Procedure authorize courts to impose sanctions for failure to respond to court orders and for failure to prosecute a case. *See* FED.R.CIV.P. 37(b)(2), 41(b). In both instances, dismissal may be an appropriate penalty. *Id.* This Court recognizes the strong policy favoring decisions on the merits barring substantial circumstances in support of dismissal as a penalty. *See Hildebrand v. Allegheny County*, 923 F.3d 128, 132 (3d Cir. 2019).

In *Poulis v. State Farm Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), the Third Circuit identified six factors for courts to balance when deciding whether to impose an involuntary order of dismissal. The *Poulis* factors are:

(1) The extent of the party's personal responsibility; (2) the prejudice to the

adversary caused by the plaintiff's conduct; (3) the history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim.

*Id.* at 868. No single *Poulis* factor is determinative and dismissal may be appropriate even if some of the factors are not met. *See Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992); *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988). If a court finds dismissal appropriate under *Poulis*, it may dismiss an action *sua sponte*, pursuant to its inherent powers and Federal Rule of Civil Procedure 41(b). *See Iseley v. Bitner*, 216 F. App'x 252, 254-55 (3d Cir. 2007) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

**1. Plaintiff's Personal Responsibility.** In this case, it appears that Plaintiff, in refusing to provide his counsel with information responsive to Defendants' discovery requests, is solely responsible for his failure to comply with Court orders and to prosecute his case. By failing to cooperate in discovery, Plaintiff made it impossible to meaningfully participate in this litigation. Moreover, Plaintiff has explicitly informed the Court of his refusal to provide responses to Defendants' discovery requests. *See* Dkt. No. 43. By failing to cooperate in discovery, Plaintiff has effectively abandoned his case.

**2. Prejudice to Defendants.** Permitting Plaintiff's case to go forward when Plaintiff has demonstrated an apparent refusal to participate in advancing this case or comply with Court orders would cause manifest injustice to Defendants. Plaintiff initiated this action through his counsel and has since failed to cooperate in discovery. Plaintiff's actions support dismissal. *See, e.g., Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984).

**3. History of Dilatoriness.** Plaintiff has a history of dilatoriness. He repeatedly failed to provide information required to respond to Defendants' discovery requests. Accordingly, Plaintiff's inaction in this matter supports dismissal.

**4. Willfulness or Bad Faith.** The Court will not conclude that Plaintiff has proceeded in bad faith. However, Plaintiff's conduct has been willful. Plaintiff has willfully failed to cooperate in discovery through his refusal to provide the information necessary to respond to Defendants' discovery requests, even after being advised that doing so may result in the dismissal of his case. These circumstances, when taken as a whole, support dismissal as the appropriate remedy.

**5. Effectiveness of Alternative Sanctions.** Plaintiff's repeated and acknowledged failure to cooperate in discovery suggests that alternative sanctions would be futile. Despite giving Plaintiff several extensions to serve responses to Defendants' discovery requests and advising Plaintiff that failing to do so may result in the dismissal of his case, Plaintiff has continued to refuse to cooperate in discovery. No other sanctions would be effective if Plaintiff does not heed them. *See Joyce v. Continental Airlines, Inc.*, No. 09-2460, 2011 WL 2610098, at *2 (D.N.J. June 15, 2011). As such, alternative sanctions would not be appropriate.

**6. Meritoriousness of the Claims.** The Court is unable to determine the meritoriousness of Plaintiff's claim at this juncture.

In sum, Plaintiff has explicitly and consistently refused to provide information responsive to Defendants' discovery requests. As such, Plaintiff's failure to meaningfully participate in this litigation and willful abandonment of his claims establish Plaintiff's inability to adequately prosecute this matter.

## CONCLUSION

The Court having considered this matter pursuant to FED. R. CIV. P. 78 and having given consideration of the *Poulis* factors;

**IT IS** on this **22nd day of January, 2024**,

**RECOMMENDED** that Plaintiffs' claims be DISMISSED WITH PREJUDICE pursuant

to FED.R.CIV.P. 41(b); and it is further

      **ORDERED** that Plaintiff's counsel shall serve a copy of this Order on Plaintiff by certified mail, return receipt requested, and regular mail, and shall file proof of such service with the Court; and it is further

      **ORDERED** that any party may file an objection within 14 days of the date of this Order pursuant to FED.R.CIV.P. 72(b)(2).

          s/James B. Clark, III
          **HONORABLE JAMES B. CLARK, III**
          **UNITED STATES MAGISTRATE JUDGE**